# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

SABRINA CORLEY,          )
                              )
         Plaintiff,        )
                              )
     v.              )     **No. 3:12-1250**
                              )     **Judge Sharp**
WAL-MART STORES EAST, LP,  )
                              )
         Defendant.      )

## MEMORANDUM

This is a premises liability case that arose after Plaintiff Sabrina Corley slipped and hurt her knee while shopping at a Wal-Mart store. After a three day trial, a jury found Defendant Wal-Mart-Stores East L.P. to be 90% at fault for the accident and awarded Plaintiff Sabrina Corley $525,000 in damages. Now pending before the Court is Defendant's fully briefed "Motions for Judgment as a Matter of Law and, Alternatively for a New Trial" (Docket No. 107). That Motion will be denied.

## I. Governing Standards

"[A] renewed motion for a judgment as a matter of law . . . 'may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party.'" Arnold v. Wilder, 657 F.3d 353, 363 (6th Cir. 2011) (citation omitted). "In entertaining a motion for judgment as a matter of law, the court is to review all evidence and draw all reasonable inferences in the light most favorable to the non-moving party, without making credibility determinations or weighing the evidence." Jackson v. FedEx Corp. Servs., Inc., 518 F.3d 388, 392 (6th Cir. 2008) (citing, Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150-

51(2000)). "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate 'whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ.'" Id. (quoting, Jackson v. Quantex Corp., 191 F.3d 647, 657 (6th Cir. 1999)).

In diversity cases, federal procedural law applies in determining whether a party is entitled to a new trial. Armisted v. State Farm Mut. Auto. Ins. Co., 675 F.3d 989, 994 (6th Cir. 2012). Under Rule 59 of the Federal Rules of Civil Procedure, a court may grant a new trial after a jury verdict "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). The Sixth Circuit has interpreted this Rule to require a new trial only "when a jury has reached a 'seriously erroneous result' as evidenced by (1) the verdict being against the [clear] weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Decker v. GE Healthcare, Inc., 770 F.3d 378, 394-95 (6th Cir. 2014) (brackets in original, citation omitted).

## II.  Discussion

At trial, it was undisputed that, on the afternoon of November 7, 2011 at the Wal-Mart store in Antioch, Tennessee, Plaintiff twisted her knee on water that was present on the floor at the end of aisle six. In fact, both the slip and the employees' efforts to clean up the spill were captured on videotape and the jury viewed that videotape, probably more times than they would have liked. What was disputed, and what serves as the primary basis for the present Motion, is whether Defendant was negligent.

"To establish negligence, one must prove: (1) a duty of care owed by defendant to plaintiff;

(2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn. 1995). "In the context of a premises liability case, the Tennessee courts have stated that a business owner breaches the duty of care owed to its customers when it allows a dangerous condition or defect to exist on the premises if that condition or defect was created by the owner, operator or his agent; or, if the condition is created by someone else, when the business owner had actual or constructive notice that the dangerous condition or defect existed prior to the injury." Morris v. Wal-Mart Stores, Inc. 330 F.3d 854, 858 (6th Cir. 2003).

"[T]he duty owed a customer by a proprietor of a place of business 'is to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible[.]'" Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn. 1986) (quoting, Allison v. Blount Nat'l Bank, 54 Tenn. Ct. App. 359, 390 S.W.2d 716, 718 (1965)). Thus, "[t]he plaintiff in a premises liability action must prove the existence of a dangerous or defective condition that '(1) was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, there must be actual or constructive notice on the part of the owner or operator that the condition existed prior to the accident.'" Dickerson v. Rutherford Cnty. , 2013 WL 1501783 at *4 (Tenn. Ct. App. April 11, 2013) (quoting, Martin v. Washmaster Auto Ctr., USA, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)).

The jury was duly instructed on the applicable law. Specifically, the jury was informed that an owner of property has the duty to exercise reasonable care to remove or replace known conditions that present a safety hazard and that

An owner or occupier of property may have either actual or constructive notice of a dangerous condition. Constructive notice can be established by proving that the dangerous condition existed for a sufficient length of time that the premises owner or occupier, by exercising due care, should have discovered the dangerous condition.

Therefore, to recover for an injury caused by an unsafe condition of the property, the plaintiff must show that the defendant either created the unsafe condition or knew of it long enough to have corrected it or given adequate warning of it before plaintiff's injury, or that the unsafe condition existed long enough that the defendant, using ordinary care, should have discovered and corrected or adequately warned of the unsafe condition. An unsafe condition is a condition which creates an unreasonable risk of harm.

On the other hand, an owner, occupant or lessor of property is not an insurer of the safety of those who enter an establishment, and does not have a duty to guarantee the safety of those entering upon the property. Further, the duty imposed on the premises owner or occupier does not include the responsibility to remove or warn against conditions from which no unreasonable risk was to be anticipated.

You should consider all the surrounding circumstances in deciding if Wal-Mart exercised ordinary care.

(Tr. Trans. Vol. III at 108-09).

Plaintiff's theory was that Wal-Mart had constructive notice of the spill, and a reasonable jury could have found in her favor on this theory. The videotape was an hour in length but does not show how the water got on the floor. A conclusion from this is that the water was on the floor throughout the period of time captured on tape, or so a reasonable jury could conclude. Although circumstantial, such evidence may be "given the same weight as direct evidence," Bechtol v. Prelesnik, 568 F. App'x 441, 449 (6th Cir. 2014) (citation omitted), and "[t]he jury may draw any reasonable inferences from direct, as well as circumstantial, proof," United States v. Weekes, 517 F. App'x 508, 511 (6th Cir. 2013).

In its motion for judgment or a new trial, Defendant argues that "[t]he water most likely came from a customer that was in aisle six, outside of the view of the camera," and, in fact, there

4

is a "very likely probability that someone in aisle six . . . created the spill." (Docket No. 108 at 6 & 8). This is a remarkable argument to make.

From the start of the litigation, Wal-Mart took the position that the spill came from a cup held by the so-called "lady in red," an event which occurred less than two minutes before Plaintiff slipped, and which would make it highly unlikely that Wal-Mart would have constructive knowledge of the liquid on the floor. This position was maintained until literally the eve of trial when Brian Hicks – who testified to having received special training in the analysis of surveillance video in the Marine Corp and from the State Department, and who was the store's Asset Protection Manager, responsible for investigating the incident – acknowledged that the "lady in red" was holding a piece of paper, not a cup. He also acknowledged that he could not see any other potential source for the water from the surveillance video. The "lady in red" thus basically eliminated as the culprit, Wal-Mart's explanation then shifted to the pony-tailed lady in a green shirt, to something on the shelves, to Ms. Corley's or another shopper's cart, and, by the time closing arguments rolled around, to a child with a sippy cup.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Based upon what it saw and heard in the courtroom, the jury was free to consider or reject Wal-Mart's various theories of how the water came to be on the floor.

It is true that Wal-Mart did not have any burden to prove the source of the liquid. But neither did Plaintiff; her burden was simply to show that the water had been there long enough for Defendant to have constructive knowledge of its presence. A jury could have reached that determination based upon the testimony presented and the video.

In this regard, the Court rejects Defendant's assertion that jury erred because, had there been water on the floor any length of time, the video would have shown cart tracks or foot prints through the water. That argument suggest that the video was high resolution, which it was not. Moreover, the jury heard from Mr. Hicks that six pictures were taken after the accident, that "the best evidence of what was on the floor and what it looked like" (including whether the water was tracked through) would be the pictures, and that the pictures were supposed to have been preserved in the accident file, but was not.

Defendant also point out that "[t]he Sixth Circuit has repeated the U.S. Supreme Court's holding that 'witness accounts seeking to contradict an unambiguous video recording do not create a triable issue.'" (Docket No. 108 at 4 quoting, Kinlin v. Kline, 749 F.3d 573, 576 (6th Cir. 2014)). Defendant then argues:

> Defendant's video includes an hour of footage from before the slip occurred. The video shows the plaintiff slip as she exits aisle six. Because of the location of the video camera, the viewer cannot see any of the customers in aisle six. The viewer cannot see if any customers in aisle six spilled something before the plaintiff's slip occurred.
>
> The video does show the action alley area of the store, adjacent to aisle six, during the hour before the plaintiff's slip. During this hour, the store is busy and many customers walk over and past the area where the water was located at 3:40:11 p.m. These customers do not look at the floor or look back at the area after walking past it. The video does not show these customers spill anything. The plaintiff herself parks her cart and walks over the area into aisle six at 3:39:20 p.m., and she makes no indication that there is anything on the floor at that time. During the entire hour of video footage, there is no indication that something has been spilled or that something is on the floor.

(Docket 108 at 5).

The Supreme Court decision alluded to by Defendant is Scott v. Harris, 550 U.S. 372 (2007), wherein the Court addressed the role of video evidence at summary judgment. The Court held that

"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id</u>. at 380.

Defendant's suggestion that the "unabmiguous" video absolves it of liability is undermined by the fact that its most recent theory is that the spill came from somewhere down aisle six yet, admittedly, the camera did not capture any activity down the aisle. Regardless, Plaintiff's version of events was not "blatantly contradicted" by the videotape. To the contrary, upon viewing the video, a reasonable jury could conclude that, unless the water magically appeared, the water was on the floor for as long as the tape lasted. And, the fact that a jury could so find defeats Defendant's assertion that the slip was not foreseeable because the uncontradicted evidence at trial was that liquid on the floor at a Wal-Mart Store is not uncommon, is an ongoing concern, and presents a safety hazard.

Apart from liability, Defendant takes issue with the jury's apportionment of fault. However, "[a]s every trial lawyer knows, challenging a jury's allocation of fault is the legal equivalent of a 'Hail Mary' pass.'" <u>Braswell v. Lowe's Home Ctr., Inc.</u>, 173 S.W.3d 41, 43 (Tenn. Ct. App. 2005). This is because "the issue of allocation of comparative fault is . . . a determination of fact to be made by the jury," <u>Wilson v. Americare Sys., Inc.</u>, 397 S.W.3d 552, 559 (Tenn. 2013), entitled to "a presumption of correctness[,]" <u>Timmons v. Metro. Gov't of Nashville and Davidson Cnty.</u>, 307 S.W.3d 735, 738 (Tenn. Ct. App. 2009).

Here, there is no reason to disregard the presumption of correctness in the jury's determination that Wal-Mart was 90% at fault. The jury could easily conclude that Plaintiff acted no differently, nor any less prudently, than any other shopper who found herself at Wal-Mart,

looking for a jar of Miracle Whip with her eight year old son in tow.

Defendant argues that "Plaintiff should have been allocated much more than 10% of the fault" because, if Assistant Manager "Katrina Smith should have seen [the water], then plaintiff failed to exercise reasonable care in failing to see it as she returned to her car after selecting the product she wanted to buy." (Docket No. 108 at 14). This neglects to consider, however, the point – repeatedly driven home by Defendant at trial – that employees like Ms. Smith are trained and supposed to be on the lookout for spills. It also neglects to consider that it was for the jury to weight the evidence and determine whether Wal-Mart exercised reasonable care under the circumstances.

## IV.  Conclusion

When the evidence and inferences are construed in Plaintiff's favor, the Court cannot say that a reasonable jury would have no choice but to absolve Wal-Mart of liability.  Nor can the Court say that the jury in this case reached a seriously erroneous result or that its verdict is against the weight of the evidence.  Accordingly, Defendant's request for judgement as a matter of law or a new trial will be denied.

An appropriate Order will be entered.

Kevin H. Sharp
_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

8